May it please the court, counsel. I am Kelly Taylor with the Office of the State Appellate Defender on behalf of the defendant, Cortez Williams. The issue in this case is divided into two instances in which the trial court committed reversible error. I numbered them as A and B. A, when it refused to instruct the jury on self-defense, and B, when it improperly excluded key evidence. Williams respectfully requests that this honorable court reverse this conviction and remand for a new trial. There were two altercations between Williams and the decedent Melvin Sanders. Williams testified that on September 13, 2013, he was chatting with a group of women on Stanley Street in Peoria that he had just met at Griswold Liquors. He was armed with a handgun because it was an unsafe area of Peoria. While he was chatting with these women, an unknown man, whom he later learned was Melvin Sanders, came over and punched Williams in the face without provocation. Williams feared an attack by another man in the group, and he pulled his gun out and put it at his side. Sanders also pulled his jacket aside, showed his gun, and said, oh, we got those too. Someone intervened, and Williams left. Eight days later, on September 21, 2013, Williams was again cruising Peoria for women in the Griswold Liquors area. He was again armed for self-defense because he testified that this was an unsafe neighborhood. He again ended up near Stanley Street, and he saw a group of people outside, but they were in front of a different house from the house where he had been punched the week before. While walking past the group, he heard a familiar voice say, what's up? He turned and saw Sanders reaching into his coat pocket, and Williams thought that Sanders was going to pull a gun on him, so Williams shot him first. Defense counsel argued that Williams was entitled to a self-defense jury instruction, but the court refused. The court did not believe Williams' version of events and disallowed the self-defense instruction. The court, however, did allow an instruction on second-degree murder based on unreasonable belief in self-defense. The court also refused to allow the jury to hear evidence that a handgun was found on Sanders. The court erred in not allowing Williams' self-defense instruction because whether Williams' version of events was believable was a question for the jury and not the court to decide. The case law is very clear that only very slight evidence of self-defense is required for a self-defense instruction to be given. The evidence does not have to be consistent with other evidence presented at trial so long as it is capable of being believed. The court in People v. Harris said that if the evidence of a reasonable belief for self-defense was contradicted by other evidence and might not be believed by the jury, then, quote, the defendant's credibility is a matter for the jury to resolve. Here, Williams encountered a man who had punched him in the face for no reason eight days prior, who was armed eight days prior, and who appeared to be pulling out a gun. In fact, Sanders did have a gun. This version of events was certainly believable. It was for the jury and not the judge to make the final determination of Williams' credibility. Several courts have found that if the instruction on unreasonable self-defense is given, then the perfect self-defense instruction must be given, too. It is for the jury to decide whether that belief is reasonable or unbelievable, but the instruction should both be given. The jury should have been allowed to contemplate Williams' complete theory of defense, and the trial judge erred when it refused to instruct the jury on self-defense. It was reversible error for the court to exclude evidence that Sanders had a gun on him the night he died because it was relevant to corroborate Williams' testimony that Sanders had a gun the previous week. The jury did not hear all the evidence in Williams' case, and if it had, there was a reasonable probability that there would have been a different outcome. Had the jury known that Sanders had a gun on him that night on September 21st, they were more likely to find that Williams' testimony about the events on September 13th in which Sanders showed a gun to him was true. Illinois rules of evidence permit the admission of any relevant evidence. The police found a handgun in Sanders' pants. This evidence is certainly relevant for two reasons. One, because Williams feared Sanders had a gun, and he did. And two, the jury is more likely to believe Williams' testimony that Sanders had a gun the previous week, and that Williams therefore reasonably believed that Sanders was pulling a gun on him immediately before Williams shot Sanders. The court refused to allow any evidence of the gun because it was not in Sanders' jacket pocket, it was in his pants, and Williams did not see the gun. Williams testified that Sanders' hand was moving as if pulling a gun out of his jacket pocket. The trial court's test for whether the handgun was allowed in was, quote, whether the defendant saw it or whether there were furtive movements or indicators that it was about to be used, things like that. I don't know that the facts show that here. Other than the defendant saying he had his hand in his pocket, it's got to be somewhere, end quote. Williams testified that he, not just that he thought that Sanders, that he saw Sanders' hand in his pocket, but that he thought Sanders was pulling his gun out of his pocket. He feared that Sanders had a gun, and he did. The gun evidence would have supported Williams' testimony regarding September 13th, which was the initial altercation. Sanders' cousin testified that Sanders did not show a gun to Williams. But if Sanders was carrying a gun on Stanley Street, which is a rough neighborhood, on September 21st, then it was reasonable to believe that he also had a gun on September 13th. Williams was afraid when he heard Sanders' voice because he knew that Sanders was violent, and he knew that Sanders, or at least suspected that Sanders had a gun. The jury did not get the entire picture. Williams had a right to present his complete theory of the case, and it was a question for the jury to decide whether this was self-defense and whether it was reasonable. Because Williams did not get to present a complete defense, he was denied his right to a fair trial. Because of the errors described here and in the brief, Cortez Williams respectfully requests that this honorable court reverse his conviction and remand him for a new trial. Are there any questions? Thank you, Ms. Taylor. Thank you. Mr. Michael Bailon. May it please the court, counsel? Lord Michael Bailon on behalf of the people. Regarding the self-defense instruction issue, whether or not a self-defense instruction should have been given, any error was harmless because the verdict wouldn't have been different had the jury been given the instruction. That's because the jury rejected even the second-degree mitigating factor. Defendant's testimony, even if it was believed, didn't show self-defense, and it wasn't even believable because it was contradicted by defendant's own statement that he made to police shortly after the event and other testimony. First, the jury was given the second-degree murder verdict, and they rejected it. That shows that they didn't even believe that defendant had an unreasonable belief that the force he used was necessary to prevent imminent great bodily harm to himself. So they wouldn't find that he had that belief and that it was reasonable if they didn't even find it was unreasonable. Do you think that would have been different, though, if they had learned that the victim had a gun on his person? He felt something. He had to undo the pants. He couldn't even see it without undoing the pants, and then he found it. Whereas defendant's testimony, and again, the testimony is inconsistent with the statement that he gave to police earlier. His testimony was that he's the one that came back to this area. He admits that it's the same block. Now, in his statement, he even admitted that he knew it was the same house. And he even says that he just saw the victim standing there with one hand on a bottle of liquor, the other hand in his coat pocket. He thinks he's taking something out of his coat pocket. Now, whether he had some gun in his waistband or not, if he had a gun in his waistband, that wouldn't show that he was just standing around this party with his hand on his gun in his pocket, waiting just in case someone passed by that he happened to want to shoot. So because of the difference in the gun location, I think that it doesn't, that wouldn't make a difference in the jury's verdict, even with the gun evidence. The Russell case is kind of the most similar case we have on this, and that case was kind of the flip. In that case, the self-defense instruction wasn't given, and the second-degree murder instruction was, just like this case. But in that case, the jurors found that the second-degree mitigating factor did apply. So they found that defendant did have an unreasonable belief in self-defense. And the court viewed that as significant, finding that where the jury found that he did have an unreasonable belief that self-defense was necessary, that they really needed to be able to decide the self-defense question on their own because they already found the unreasonable belief, so maybe they would have found the belief reasonable. However, here, even under defendant's testimony, the jury wouldn't have found defendant justified in shooting the victim nine times, with some shots going from front to back, some shots going from back to front, just because he saw the victim at a party with a drink in his hand while taking his hand out of his other pocket. That didn't give him, the incident a week prior didn't give him license to shoot him on sight nine times. Even under defendant's testimonial version of what happened a week prior, because all he said a week prior was that defendant admitted, even in his testimony, that he was the one that first pulled the gun the week before. Defendant said that he pulled the gun after the victim punched him, and the victim just showed him the butt of the gun in his waistline. Even under defendant's testimony, the victim didn't even pull his gun out, not even after defendant had his gun out and at his side, and he only showed his gun, again, without pulling it out, after defendant had pulled the gun out on him first. So a week later, when defendant's the one that returned to the same block, defendant's the one that returned armed, defendant's driving a different car and parks it around the block and then walks up to this party, that what happened a week ago didn't give him license to shoot the, justification to shoot the victim in this case. Plus there's reason to believe that even defendant's trial testimony, which would be the most favorable version of events, wasn't true, and that's regardless of other witnesses' testimonies, it's defendant's own statement. Shortly after the shooting, defendant gave a recorded police interview, and in that statement to police, he didn't mention any of the facts that he would later mention at trial that he would then claim to use, use to claim self-defense with. He admitted he went back to the same house, and he admitted emptying his gun after the victim just said, what's up, and he admitted that he wasn't out to get anyone other than the victim, which would mean that he was out to get the victim. He didn't state in his interview that he saw the victim had a hand in his pocket. He didn't state in the interview that he thought the victim was taking a gun out of his jacket pocket, and he didn't state in the interview that the victim had showed a gun the week before. Moreover, that the defendant, or that the victim didn't show a gun the week before was also corroborated by another witness who said that the victim hadn't showed a gun the week before. So the verdict wouldn't have been different even if the self-defense instruction had been given, and the gun found on the victim's deceased body under his pants after the officer was searching for identification wouldn't have changed anything either, as it didn't show that his fear that the victim was taking a gun out of his pocket was reasonable, where the gun wasn't in the pocket, and he couldn't have possibly seen it and never said that he saw it. So if there are no further questions, the people would ask that this court affirm the defendant's conviction and sentence. What do you make of the fact that the autopsy, I think, showed nine shots to the victim? Is that something that the court could consider or couldn't consider? Is it relevant? I think that the court can consider it and that it is relevant because the force used is just wildly disproportionate to what he experienced because the shots, even the trajectory, some are from front to back, some are from back to front, so it shows it's consistent with him arming himself, coming back to this area, expecting him to encounter the person he encountered the week before, basically looking for him, that he intended to kill him, not just feared that he needed to defend himself. Let me follow up on a point that you made that I wasn't aware of. In the autopsy, some of the wounds were back to front, so the victim was shot in the back? Is that what you're saying? The trajectories were back to front, so it wasn't just one shot and done. He keeps going, regardless of maybe the body's falling or I don't know how it happened, but just keeps going until his gun's empty, and in his recorded statement, he admits that he knew that he emptied his gun out, so he's not just trying to shoot once and get away. He's knowing he's emptying his gun at the victim. I think somebody saw the victim on the ground and the defendant standing over them. So you're not suggesting that the victim was running away and that could have happened after he was already down? There wasn't any testimony that he was running away. There was testimony that even after he fell, he stood over and shot at him. Thank you. Any other questions? Thank you, Your Honors. Is there a rebuttal? Yes. There's just a few things that I wanted to touch on. As far as the state's argument that because the jury was given second-degree instruction and did not find the second degree and instead gave the murder verdict, the court in Peeble v. Harris has tried to explain this much better than I probably could. They say that there are several reasons why it cannot be assumed that the verdict of murder indicates that the jury did not find an unreasonable belief. It goes through the instructions. Under these instructions, if the jury found that the defendant intended to kill the deceased and did kill him but had a reasonable belief that deadly force was justified, they were offered no alternative but to find the defendant guilty of murder. So that is one way to account for how this jury verdict came down. But had the gun evidence come in, it for sure would have made a difference, probably at least in the second-degree verdict. Had they known that the deceased did have this gun, they would have at least understood why Williams felt he was fearing for his life at this point. As far as the gun being in the decedent's pants, it's very likely that when he fell it maybe was jarred or jostled because if this person is in a neighborhood, it's an unsafe neighborhood, he's not going to have his gun in an unaccessible place. It was likely tucked into his waistband and shifted. If he fears attack, which he might if he has a gun, he's not going to want to unzip his fly to get his gun out of his pants. And also, there were the 40 rounds in this case, but there were also 9mm rounds. Someone else at this party was shooting back. So again, this is a street where multiple people have guns, and it's very possible that a defendant was afraid for his life when he heard the voice of Sanders. Was the victim's gun a 9mm? No. It's not alleged that the victim got shots off. It's alleged that someone else at that party was shooting. Are there any other questions for the court? Yes. The self-defense should have been given almost as a matter of course, because they should both be given. One is given, the other should have been given. But the gun evidence is really what would have made the biggest difference in this case. It should have been given, the jury should have gotten the full picture, and it should have been them to decide what was credible and whether this self-defense was reasonable or unreasonable. My one last point was that the varying testimony in this case, the other witnesses were very close relatives of the decedent in this case, so whether there might have been some bias is possible. Any more questions? I don't think so. Then, thank you very much. Thank you both for your arguments here today. The case will be taken under advisement, and a written decision will be issued to you as soon as possible. Right now, I'll take a short recess.